UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| ANTHONY JULIAN DEMELLO, | No. 2:16-cv-1275-EFB |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, plaintiff's motion is denied and the Commissioner's motion is granted.

I. BACKGROUND

Plaintiff filed an application for SSI, alleging that she had been disabled since December 31, 2011. Administrative Record ("AR") at 142-147. His application was denied initially and upon reconsideration. *Id.* at 84-88, 92-96. On May 13, 2014, a hearing was held before Administrative Law Judge ("ALJ") Trevor Skarda. *Id.* at 29-61. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified. *Id.*

1

On October 22, 2014, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] *Id*. at 10-22. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since October 1, 2012, the application date (20 CFR 416.971 *et seq.*).

* * *

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, reverse lordosis of the cervical spine, thoracic curvature with mild degenerative changes, pain disorder associated with psychological factors, and personality disorder (20 CFR 416.920(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

* * *

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

* * *

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant is additionally limited to occasional climbing of ramps or stairs, precluded from climbing ladders ropes or scaffolds, and may occasionally stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme cold, concentrated exposure to excessive vibration, and concentrated exposure to operational control of dangerous moving machinery as well as unprotected heights. He is limited to simple routine and repetitive tasks. He is limited to low stress work defined as no more than occasional decision-making required or occasional changes in the work setting, with occasional public and coworker interaction.

* * *

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

* * *

6. The claimant was born [in] 1990 and was 22 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963)

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

* * *

10. The claimant has not been under a disability, as defined by the Social Security Act, since October 1, 2012, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 12-22.

/////

3

1 | Plaintiff's request for Appeals Council review was denied on April 12, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-4.

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred at step-five of the sequential evaluation process by relying on evidence from a vocational expert that conflicted with the Dictionary of Occupational Titles ("DOT"). ECF No. 15 at 8-11.

At the fifth step, the ALJ is required to "identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ must first assess the claimant's residual functional capacity ("RFC"), which is the most the claimant can do despite his physical and mental limitations. 20 C.F.R. § 416.945(a)(1). The ALJ then must consider

what potential jobs the claimant can perform given his RFC, age, education, and prior work experience. 20 C.F.R. § 416.966; *see Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). "In making this determination, the ALJ relies on the DOT, which is the SSA's primary source of reliable job information regarding jobs that exist in the national economy." *Zavalin v. Colvin*, 778 F.3d 842, 845-46 (9th Cir. 2015) (quotation marks omitted).

In additional to the DOT, an ALJ may rely on testimony from a vocational expert who testifies about the jobs the claimant can perform in light of his limitations. 20 C.F.R. § 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). Generally, occupational evidence provided by a vocational expert should be consistent with the occupational information supplied by the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p, at *4). However, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. Accordingly, where "the expert's opinion that the [claimant] is able to work conflicts with, or seems to conflict with, the requirements listed in the Dictionary, . . . the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016).

The ALJ served vocational interrogatories on the vocational expert.[2] AR 234-238. In response, the vocational expert stated that an individual with plaintiff's RFC, education, age, and work experience maintained the ability to work as a touch-up screener, printed circuit board assembly ("assembly"), DOT 726.684-110; film touch-up inspector ("inspector"), DOT 726.684-050; and loader, semiconductor dies ("loader"), DOT 726.685-066. AR 242. The vocational expert further indicated that there was no conflict between his findings and the information provided in the DOT. *Id.* at 243.

Plaintiff contends, however, that there were conflicts between the vocational expert's findings and the DOT. First, plaintiff contends that his limitation to occasional decision making

---

[2] After the hearing, plaintiff was examined by psychologist Patricia Spivey, Psy.D. AR 526-532. Because Dr. Spivery's opinion influenced the ALJ's RFC determination, additional vocational evidence was needed.

conflicts with the ability to perform the demands of the assembly and inspector jobs. According to plaintiff, these positions require continuous decision making. ECF No. 15 at 10.

The DOT provides that an inspector:

> Inspects and repairs circuitry image on photoresist film (separate film or film laminated to fiberglass boards) used in manufacture of printed circuit boards (PCB's): Inspects film under magnifying glass for holes, breaks, and bridges (connections) in photoresist circuit image. Removes excess photoresist, using knife. Touches up holes and breaks in photoresist circuitry image, using photoresist ink pen. Removes and stacks finished boards for transfer to next work station. Maintains production reports. May place lint free paper between dry film sheets to avoid scratching circuit images on film.

Film Touch-up Inspector, DOT 726.684-050, 1991 WL 679601.

For the assembly position, the DOT provides that the worker:

> Inspects printed circuit board (PCB) assemblies for defects, such as missing or damaged components, loose connections, or defective solder: Examines PCB's under magnification lamp and compares boards to sample board to detect defects. Labels defects requiring extensive repairs, such as missing or misaligned parts, damaged components, and loose connections, and routes boards to repairer. Performs minor repairs, such as cleaning boards with freon to remove solder flux; trimming long leads, using wire cutter; removing excess solder from solder points (connections), using suction bulb or solder wick and soldering iron; or resoldering connections on PCB's where solder is insufficient. Maintains record of defects and repairs to indicate recurring production problems. May reposition and solder misaligned components. May measure clearances between board and connectors, using gauges.

Touch-Up Screener, Printed Circuit Board Assembly, DOT 726.684-110, 1991 WL 679616.

Based on these descriptions, plaintiff argues that the inspector positions "concerns inspection in making decisions on whether the product meets standards or whether the product requires repair," while the assembly position "involves inspection and making decisions about defects, extent of repair, missing or aligned parts, and performing minor repairs." ECF No. 15 at 9. Plaintiff contends that performing such tasks involves continuous decision making, which conflicts with his limitation to only occasional decision making. *Id.*

"For a difference between an expert's testimony and the Dictionary's listing to be fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804,

1  808 (9th Cir. 2016). A conflict is obvious where the vocational expert's testimony is "at odds
2  with the Dictionary's listing of job requirements that are essential, integral, or expected."

3    Here, the DOT descriptions for the assembly and inspector positions indicate that the jobs
4  require some amount of decision making. The individual performing these jobs will have to
5  decide whether a product is defective and determine what repair is needed. However, the
6  descriptions do not indicate the frequency at which such decisions must be made during a typical
7  day. For instance, once a defect is identified and an appropriate repair is selected, it may be the
8  case that the worker spends a substantial amount of time making the required repair, which would
9  not necessarily involve further decision making. Simply put, the job descriptions do not detail the
10 frequency at which decisions must be made by the worker. Accordingly, it is not obvious or
11 apparent that plaintiff's limitation to occasional decision making, which is defined as "occurring
12 from very little up to one-third of the time," SSR 83-10, conflicts with the demands of the
13 assembly and inspector positions.

14    Plaintiff next argues that the vocational expert's finding that he could work as a loader is
15 inconsistent with his limitation to no more than occasional interactions with coworkers. ECF No.
16 15 at 11. The argument rests on unsound assumptions. Plaintiff correctly notes that the loader
17 position requires working under specific instruction. *Id.*; *see* Loader, Semiconductor Dies, DOT
18 726.687-030, 1991 WL 679637. He then observes that instructions must "come from
19 someplace." ECF No. 15 at 11. He then argues that "working under specific instructions
20 precludes the worker from making the decision him or herself," which leads to his conclusion that
21 "[w]orking under specific instructions requires more than occasional interaction with coworkers."
22 *Id*.

23    The argument ignores that job instructions are likely to come from supervisors, not
24 coworkers, and that plaintiff's RFC does not include any limitations regarding his ability to
25 interact or accept instructions from supervisors. Even if receiving instructions requires
26 interaction with coworkers, an individual could still work independently once the instructions are
27 provided, thereby requiring no more than minimal interactions with others. Furthermore,
28 /////

7

instructions can also be provided in writing, which would require no more than a brief interaction with another person for the limited purpose of receiving the instructions.

More fundamentally, however, the argument is unsupported by the DOT description for the loader position, which provides that the job involves "Taking Instructions-Helping," but further states that the activity is "Not Significant." *See* loader, semiconductor dies, DOT 726.687-030, 1991 WL 679637. The description also indicates that the job involves working independently without significant communication with others. *Id*. ("Talking: Not Present - Activity or condition does not exist."). Thus, DOT description for the loader job does not suggest that the position involves more than occasional interaction with coworkers.

Accordingly, there was no apparent conflict between the vocational expert's testimony and the DOT.

IV. <u>CONCLUSION</u>

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's plaintiff's favor.

DATED: September 25, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE